17  585
60  484

———◆———

Town of PLYMOUTH *against* PAINTER :

IN ERROR.

The acts of an officer *de facto*, whether judicial or ministerial, are valid, so far as the rights of the public, or third persons having an interest in such acts, are concerned ; and neither the title of such an officer, nor the validity of his acts as such, can be indirectly called in question, in a proceeding to which he is not a party.

An officer *de facto*, is one who exercises the duties of an office under colour of right, by virtue of an appointment or election to that office ; being distinguished, on the one hand, from a mere usurper of an office, and on the other, from an officer *de jure*.

Therefore, where a person eligible to the office of grand-juror, was, in the month of *October*, duly chosen a grand-juror for the town, for the ensuing year ; he refused to take the oath prescribed for grand-jurors, and was fined according to law for such refusal ; this fine he paid ; in the month of *May* afterwards, he took the oath, and the next day, exercised the functions of a grand-juror, by making a presentment for an offence, and prosecuting it ; in a suit between third persons, in which the validity of his official acts came in question, it was held, that such person was an officer *de facto*, and his acts, as such, were to be regarded as valid.

THIS was an action of debt, brought by *Allen Painter* against the town of *Plymouth*, to recover of the defendants the sum of 1 dollar, 20 cents, which the plaintiff claimed as due to him as his fees, as a witness, in a public prosecution, before a justice of the peace in that town, against *John C. Calhoun* and *Lucius P. Porter*, for a matter of delinquency.

VOL. XVII.          74

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1846.*

Plymouth
*v.*
Painter.

On the trial of the cause before the justice, on the general issue, the following facts were proved.

At a town meeting of the town of *Plymouth*, legally warned, and held on the 7th of *October* 1844, *Sylvester Matthews* was one of six persons who were duly chosen grand-jurors for that town. On the 21st of *February* 1845, a suit was commenced against him, in favour of *Edward Langdon*, the town treasurer, to recover the penalty of five dollars, for refusing to accept the office of grand-juror, returnable before a justice of the peace, on the 1st of *March* 1845; in which suit a judgment and execution were obtained against him. On the 19th of *May* 1845, he paid the amount of such execution to the attorney of the town; which was by him paid into the town treasury. It did not appear, that the town of *Plymouth* had ever appointed another grand-juror in the place of *Matthews ;* but it was proved, that on the 16th of *May* 1845, the oath prescribed by law for grand-jurors, was duly administered to him.

On the 17th of *May* 1845, *Matthews*, as grand-juror, preferred his complaint against *Calhoun* and *Porter*, for violations of the law regulating the sale of spiritous liquors, which complaint was returned to *Heman Welton*, Esq., justice of the peace; and on the trial of the cause, *Painter*, the plaintiff, was duly summoned to appear as a witness in support of the complaint. He accordingly appeared before justice *Welton*, and testified on the part of the prosecution. *Calhoun* and *Porter* were acquitted of the offences charged against them; and the justice taxed the costs accruing in the suit, against the town of *Plymouth*, including the sum of 1 dollar, 20 cents, in favour of *Painter*, as his fees as a witness. The record of this judgment counted upon the complaint as " the complaint of *Sylvester Matthews*, grand-juror," &c. On the 3d of *December* 1845, justice *Welton* issued his order to the town treasurer of that town for the payment of the costs so taxed. The plaintiff, on the 4th of *December* 1845, presented said order to *Edward Langdon*, the treasurer of said town, and demanded of him said sum of 1 dollar, 20 cents, as the plaintiff's fees as such witness, which he neglected and refused to pay.

On these facts the defendants claimed, that *Matthews* was not, at the time of making said complaint, a grand-juror of the town of *Plymouth*. But the court was of opinion and deci-

ded, that it sufficiently appeared from the records of justice *Welton,* that *Matthews* was a lawful grand-juror; that it was not competent for the defendants to go back of said record to enquire whether *Matthews* was, or was not, a lawful grand-juror; and if such enquiry was proper, the court was of opinion, from the facts proved, that *Matthews* was a lawful grand-juror, at the time of making and hearing said complaint. And thereupon the court found the issue in favour of the plaintiff, and rendered judgment accordingly. To reverse this judgment, the defendants thereupon brought a writ of error in the superior court; which was reserved for the advice of this court, as to what judgment should be rendered thereon.

*Hollister,* (with whom was *Graves,*) for the plaintiffs in error, after remarking that *Painter,* the plaintiff in the suit, was bound to show the existence of such law and such facts, as would warrant the court to find that the defendants were *indebted* to him,—the burden of such proof lying wholly upon him—contended, 1. That a legal presentment must be made, by a legal officer, to authorize the magistrate to draw on the town treasurer for costs. *Stat.* 328. *tit.* 45. *s.* 2.—*p.* 174. *tit.* 10. *s.* 131.—*p.* 179. *tit.* 20. *s.* 151. (ed. 1838.)

2. That *Matthews,* who assumed the functions of a grand-juror, in the presentment and prosecution of the complaint against *Calhoun* and *Porter,* was not such legal officer. In the first place, by the common law, irrespective of any statute provision, where the appointment of an officer is not by *deed,* he may accept or decline the office, *by parol.* *Rex* v. *Mayor of Rippon,* 1 *Ld. Raym.* 563. *S. C.* 2 *Salk.* 433. *Regina* v. *Lane,* 2 *Ld. Raym.* 1304. *S. C.* 11 *Mod.* 270. *Regina* v. *Gloucester, Holt's R.* 450. *Van Orsdall* v. *Hazard,* 3 *Hill's R.* 243. 248. Secondly, by our statute, the acceptance and qualification, by taking the oath, must be *immediate.* *Stat.* 328. *tit.* 45. *s.* 3. 5.

3. That if the person chosen does not so accept and qualify, the office becomes *vacant.* Such neglect is equivalent to a positive refusal to accept. That a vacancy may be *implied,* see *The People* ex rel. *Whiting* v. *Carrique,* 2 *Hill* 93. 97.

4. That the issuing of the order upon the town, had no effect upon its rights. In the first place, it was a mere *minis-*

*Litchfield*,
June, 1846.

Plymouth
*v.*
Painter.

*terial* act.   Secondly, if otherwise, the town was not a party to the proceeding, and had no opportunity to be heard.

5. That the town was not estopped, by the record of justice *Welton*, from denying that *Matthews* was a legal grand-juror. In the first place, this point was not in issue.   Secondly, it was not decided or passed upon, by the court.   Thirdly, the town was not a party, and had no notice of the suit until the order came.

*Seymour* and *Johnson*, for the defendant in error, were stopped by the court.

Storrs, J.   On the facts in this case, the plaintiff in error claims, that there was a refusal by *Matthews* to accept the office, and that he could not, by subsequently taking the oath, become competent to exercise it;   and that, therefore, not being legally a grand-juror, when said complaint was made, the town of *Plymouth* were not bound by the proceedings of the court before which it was tried, and could not be subjected for the fees of the defendant in error, as a witness in that cause.   The main question made by the plaintiff in error before us, is, whether *Matthews*, by taking the oath, under these circumstances, became lawfully entitled to exercise the office of grand-juror.   We do not think, that that question necessarily or properly arises in this case ;   for we are clearly of opinion, that, however it might be decided, *Matthews*, when he preferred the criminal complaint, was what is termed an officer *de facto ;* and that his acts as such, which are attempted here to be drawn in question, were therefore valid and binding, as to the parties in this case, and all other third persons, to the same extent as if he were an officer *de jure.*

An officer *de facto*, is one who exercises the duties of an office, under colour of an appointment or election to that office.   He differs, on the one hand, from a mere usurper of an office, who undertakes to act as an officer without any colour of right ;   and, on the other, from an officer *de jure,* who is, in all respects, legally appointed and qualified to exercise the office.   These distinctions are very obvious, and have always been recognized.   It is not, in all cases, easy to determine what ought to be considered as constituting a colourable right to an office, so as to determine whether one is a mere

usurper; *The King* v. *The Corporation of Bedford Level*, 6 *East* 368. but it is not necessary, in the present instance, to examine the cases on that point, since, according to all the authorities, here was undoubtedly a fair colour of right in the person acting as a grand-juror, to exercise that office, whether he was legally qualified to do so, or not. He was plainly more than a mere usurper; he was legally appointed by the town to the office, and was eligible to such appointment, and claiming a right to act under it, took, in due form, the oath prescribed by law for the office. These would, confessedly, be sufficient to confer on him a perfect legal title to the office, but for what intervened between the appointment and the taking of the oath. Whatever may be the effect of what thus intervened upon the question whether he could afterwards rightfully become qualified for the office, by taking the oath, it is clear, that the administration of it, in connexion with his previous appointment, gave him at least a colour, pretence or show of right to exercise the office; which is all that is necessary, in order to constitute him an officer *de facto*. Even if his previous refusal to take the oath, legally disqualified him from subsequently doing so, this effect was not so palpable and obvious as to deprive him of a fair colour of right to exercise the office. There was an observance of all the legal forms requisite to enable him to act as such officer; and this clearly constituted a colourable title, or apparent right.

It is a well settled principle, that the acts of an officer *de facto*, are valid, so far as the rights of the public or third persons who have an interest in the acts done, are concerned; and that the title of such an officer, or the validity of his acts as such, cannot be indirectly called in question, in a suit to which he is not a party; and this principle applies as well to judicial as ministerial officers. This doctrine has been established from the earliest period, and repeatedly confirmed, by an unbroken current of decisions down to the present time.

In the case of *The Abbot of Fonntane, Year-book*, 9 *Henry* 6. 33. it was held, that an obligation for goods sold for the use of a religious house, made by one as abbot of the house, who held his office under colour of an election, by only a minor part of the votes, was not voidable by the true abbot, who was elected by a majority of the votes after he recovered the pos-

*Litchfield,*
June, 1846.

Plymouth
*v.*
Painter.

*Litchfield,*
June, 1846.

Plymouth
*v.*
Painter.

session of the office, because the former had a colour of title when he made the obligation, and he who sold the goods was not bound to examine his title to the office.

In *Leach* v. *Howel, Cro. Eliz.* 533. which was the case of an information for bringing certain merchandize into the country, without paying, or agreeing for the payment of, the custom and subsidy due for them to the collector of the customs in *London*, or in any other port, or to his deputy, it was held, that an agreement made at the custom-house in a particular port, with a person who had there exercised the office of deputy of one who was a deputy of the collector of the customs there, was valid, although the person with whom such agreement was made, was a deputy *de facto* only, and not *de jure ;* for that it would be mischievous to the merchants to require them to examine by what authority the officers of the customs make their compositions.

In *Harris* v. *Jays, Cro. Eliz.* 699. it was conceded by the court, that if one being created bishop, the former bishop not being deprived or removed, admits one to a benefice upon a presentation, or collates by lapse, these are good, and not avoidable ; for that the law favours one in a reputed authority.

In *Knight* v. *The Corporation of Wells, Lutw.* 508. it was held, that if one elected mayor of a corporation, without being legally qualified to be chosen to that office, after such election puts the seal of the corporation to a bond, this obligation is good, because, by coming into the office by colour of an election, he was thereby mayor *de facto ;* and all judicial and ministerial acts done by him, are good.

In *Knowles* v. *L——, Moor* 112. and *Harris* v. *Jays, Cro. Eliz.* 699. a distinction was taken, by the court, between copy-holds granted by a steward of a manor, who had colour, but no right to hold a court, and those granted by one who had neither colour nor right, and who therefore was a mere usurper ; the former being deemed valid, but the latter void.

In *King* v. *Lisle, Andrews* 163. S. C. 2 *Stra.* 1090. which has been considered a leading case, the same distinction was made between an officer *de facto*, acting *colore officii*, and an officer *de jure.*

The same principle has been uniformly adopted in the modern *English* cases. It was distinctly acted upon, in *The King*

v. *The Corporation of Bedford Level,* 6 *East* 366. and in the more recent case of *The Margate Pier* v. *Hannam,* 3 *B. & A.* 266. (5 *E. C. L.* 278.) where a statute provided for the appointment of justices of the peace in a certain place, and declared, that no person should be authorized to act as justice, unless he had taken certain oaths, it was decided, that the acts of a justice appointed under that law were valid, although he had not taken the oaths; and although he might be punished for so acting; and that therefore, persons seizing goods under a warrant of distress, signed by such justice, were not trespassers. Indeed, the doctrine in these cases is universally applied in *England* to officers *de facto,* from the lowest officer up to the king. 1 *Bla. Com.* 204. 371. 1 *Hale's P. C.* 60. *Foster* 397. 398. *Hawk. P. C. b.* 1. *ch.* 8. *sec.* 1. 3.

The same principles have been repeatedly adopted, by the courts of this country.

In *The People* v. *Collins,* 7 *Johns. R.* 549. a peremptory *mandamus* was issued to the defendant, who was a town-clerk, to record a highway laid out and established, by the commissioners of highways, in the town, although it appeared, by the return of the clerk to the alternative *mandamus,* that the commissioners had not taken the oath of their office, and a certificate of such oath had not been filed in the clerk's office, as required by law. The court said, that the commissioners were liable to a penalty; but that they were commissioners *de facto,* as they came into office by colour of title, and that their acts, as such, were valid as far as the rights of third persons, and of the public, were concerned; and *Kent,* Ch. J. observed on the argument, that the point was too well settled to be discussed.

In *Tucker* v. *Aiken* & al. 7 *N. Hamp. R.* 113. where the subject was elaborately examined, the court adopted the same general principle as to the validity of the acts of officers *de facto,* and decided, that it was applicable to those officers of towns, whose duty it is to assess and collect taxes. Therefore, where the office of collector was set up at auction, and struck off to the lowest bidder, who was afterwards chosen collector by the town, it was held, that, although the proceeding was illegal, the collector, coming into office by colour of an election, was to be considered an officer *de facto*; and that the objection could not be taken in an action against the

select-men, for an illegal assessment and collection of taxes. It was also decided, in the same case, that where the moderator of the town meeting at which the collector was chosen, had neglected to take the oath required by the statute, the select-men were not liable for committing the collection of the taxes to such collector.

In *Mason* v. *Dillingham*, 15 *Mass. R.* 170. a levy of an execution on a pew in a meeting-house, made by a coroner who had not given bond for the faithful execution of his office ; and in *Bucknam* v. *Ruggles*, 15 *Mass. R.* 180. an extent of an execution upon real estate, made by a deputy-sheriff, who had not taken the oath required by law, were held to be valid ; the court saying, in the latter case, that such a rule was necessary to prevent a failure of justice, and great public mischief. The following cases also fully sustain the same rule. *Fowler* v. *Beebe* & al. 9 *Mass. R.* 231. *Moore* v. *Graves*, 3 *N. H. R.* 408. *Morse* v. *Calley*, 5 *N. H. R.* 222. *Baird* v. *Bank of Washington*, 11 *S. & R.* 411. *Cocke* v. *Halsee*, 16 *Pet.* 85. *McInstry* v. *Tanner*, 9 *Johns. R.* 125. *Wilcox* v. *Smith*, 5 *Wend.* 231. *The People* v. *Bartlett*, 6 *Wend.* 422. *The People* v. *Covert*, 1 *Hill* 674. *Trustees of Vernon Society* v. *Hills*, 6 *Cowen* 23. *The People* v. *The Corporation of New-York*, 3 *Johns. Cas.* 79. *McKim* & al. v. *Somers*, 1 *Penn.* 297. *The People v. Hopson*, 1 *Denio* 574.

In the case last cited, it was held, that on the trial of an indictment for resisting a constable, while engaged in executing process against the defendant's property, the defendant is not entitled to show, that the officer had not taken the oath of office, or given the security required by law ; it being sufficient, in such a case, that the party resisted was an officer *de facto*.

The principle established by these cases, in regard to the proceedings of officers *de facto*, acting under colour of title, is one founded in policy and convenience ; is most salutary in its operation ; and is, indeed, necessary for the protection of the rights of individuals, and the security of the public peace. The rights of no person claiming a title or interest under or through the proceedings of officers having an apparent authority to act, would be safe, if he were obliged to examine the legality of the title of such officer up to its original source, and

the title or interest of such person were held to be invalidated, by some accidental defect or flaw in the appointment, election or qualifications of such officer, or in the rights of those from whom his appointment or election emanated ; nor could the supremacy of the laws be maintained, or their execution enforced, if the acts of officers having a colourable, but not a legal title, were to be deemed invalid. The remarks of *Abbott,* C. J. in the case of *Margate Pier Co.* v. *Hannam,* before cited, presents this subject in a strong light. He says, that if the act of the justice issuing a warrant be invalid, on the ground of the objection there made, all persons who should act in the execution of the warrant, would act without any authority ; a constable who arrests, and a jailer who receives a felon, would each be a trespasser ; resistance to them would be lawful ; every thing done by either of them would be unlawful ; and a constable, or person aiding him, might, in some possible instance, become amenable even to a charge of murder, for acting under an authority, which they reasonably considered themselves bound to obey, and of the invalidity whereof they were wholly ignorant.

The acts of a mere usurper of an office, without any colour of title, are undoubtedly wholly void, both as to individuals and the public. But where there is a colour of lawful title, the doings of an officer, as it respects third persons and the public, must be respected, until he is ousted on a *quo warranto,* which is the appropriate proceeding to try the validity of a title to an office, and in which it would be necessary for him to show a complete title in all respects ; although in a suit against a person for acts which he would have an authority to do only as an officer, he must, in order to make out a justification, show that he is an officer *de jure ;* because the title to the office, being directly drawn in question, in a suit to which he is a party, may be regularly decided : so where he sues for fees, or sets up a title to property, by virtue of his office, he must show himself to be an officer *de jure. Fowler* v. *Beebe,* 9 *Mass. R.* 231. *The People* v. *The Corporation of New-York,* 3 *Johns. Cas.* 79. *The People* v. *Hopson,* 1 *Denio's R.* 574.

This view of the case renders it unnecessary to consider the other points made in the case.

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1846.*
_____
Plymouth
*v.*
Painter.

The superior court is therefore advised to affirm the judgment complained of. (*a*)

In this opinion the other Judges concurred.

Judgment affirmed.

(*a*) See the case of *Monson* v. *Hunt,* ante 566. in which the doctrine here so fully explained, and so satisfactorily established, is involved and decided.

R.

## *Memorandum.*

At the close of the term in this county, the members of the Bar being assembled to hear the decisions in the cases which had been argued, Chief Justice WILLIAMS stated, that the court, having had the matter under consideration, had resolved to enforce hereafter the rule requiring briefs from the counsel on both sides, in every case argued before that court. See 2 *Conn. R.* 375.