NORTH MISSOURI RAILROAD (HODGE v.). See Case No. 6,561.

NORTHOP (VAUGHAN v.). See Case No. 16,899.

———

## Case No. 10,327.

### NORTHROP v. GREGORY.

[2 Abb. U. S. 503.] [1]

District Court, E. D. Michigan. June Term, 1870.

ADMIRALTY—ENTRY OF DECREE.

1. A motion to open a decree in admiralty entered by default must be made within ten days after entry; otherwise it must be denied.

[Cited in The Oriental. Case No. 10,569a; Allen v. Wilson, 21 Fed. 884.]

2. A motion to open a decree in admiralty entered by default, must be accompanied by the answer proposed to be filed, or at least by a statement of the grounds of defense intended; so that the court can determine whether the defense is meritorious.

3. A decree signed by a district judge after he has tendered a conditional resignation, but before it has been accepted by the government, is valid.

Motion to rescind a decree entered by default, and allow respondent to answer. The motion was made upon two grounds: (1) Because of mistake by respondent as to return day of the citation; with general allegations of a meritorious defense. (2) Because Judge WILKINS, who signed the decree as district judge, was not such at the time of entry and signing of the decree, he having ceased to be such by his previous resignation; and the decree is therefore a nullity.

Mr. Cheever, for the motion.
H. B. Brown, opposed.

LONGYEAR, District Judge. The decree was entered February 1, 1870, and this motion was made on the 18th of the same month, seventeen days after the decree was entered. By rule 40 the time within which a decree in admiralty may be rescinded is limited to ten days after the entry of the decree. This rule, made by the supreme court in pursuance of law, is of the same binding force upon this court as if it were a statute, and it cannot be disregarded. The limitation to ten days is an implied prohibition against what is so limited being done after that time. The motion, therefore, so far as it is based upon the first ground stated, is too late, and cannot be entertained.

Even if the motion had been in time, there is a fatal objection to its being allowed upon the first ground stated. It is not accompanied with the answer proposed to be put in; neither are the facts proposed to be set up by way of defense divulged, so that the court may see that the same are relevant, and

if proven, would constitute a meritorious defense.

2. The motion, however, as to the second ground stated, stands upon a different basis, and might be made at any time, as in this respect it goes to the very existence of the court at the time the decree purports to have been entered. Judge WILKINS' resignation was made and filed December 7, 1869. The decree was entered, as we have seen, February 1, 1870. The commission of Judge WILKINS' successor, as appears by the record of it in this court, bears date February 13, 1870, and he took the oath of office, and his seat upon the bench, March 4, following. The record shows that Judge WILKINS continued to exercise the duties of district judge the same after his resignation was filed as he had done before, and up to the time his successor qualified and took possession of the office.

Judge WILKINS' resignation was made under and in pursuance of section 5 of the act of congress entitled "An act to amend the judicial system of the United States," approved April 10, 1869 [16 Stat. 44], providing "that any judge of any court of the United States who, having held his commission as such at least ten years, shall, after having attained to the age of seventy years, resign his office, shall thereafter during the residue of his natural life, receive the same salary which was by law payable to him at the time of his resignation."

Judge WILKINS' resignation (after reciting that portion of the act upon which it is founded), is in the following language: "For the sake of enjoying the rights and privileges conferred by said act, and under its provisions, and not otherwise, I do hereby resign," &c. That is, if by the repeal or modification of the act, or otherwise, he should be deprived of the rights and privileges conferred by it, or its provisions should be withdrawn or materially altered, then he did not resign. This is the plain interpretation of the language. The resignation was, therefore, conditional in its terms; and it remained conditional until the government had accepted it, and acted upon it, by the appointment and confirmation of a successor, when it became absolute and binding upon both parties—upon the judge to relinquish the office, and upon the government to pay him his salary during the residue of his natural life.

We are not, however, necessarily concerned here with the question, whether or not Judge WILKINS' resignation deprived him of his office from and after its date, because, if at the time of the entry of the decree he was, in point of law, judge de facto, that is sufficient to sustain the record. That he was such at least, I entertain no doubt.

What constitutes an officer de facto has been very clearly stated, thus: "An officer de facto is one who exercises the duties of an office under color of an appointment or

election to that office. He differs, on the one hand, from a mere usurper of an office, who undertakes to act as an officer without any color of right; and on the other, from an officer de jure, who is, in all respects, legally appointed and qualified to exercise the office." Judge Storr, of Connecticut, in delivering the opinion of the court in Plymouth v. Painter, 17 Conn. 585, 588. And the same learned authority adds, "These distinctions are very obvious, and have always been recognized."

Judge WILKINS was certainly not a usurper. He was in lawful possession of the office; and notwithstanding his resignation, he never relinquished that possession until his successor was appointed and qualified, but, on the contrary, he continued to exercise the duties of the office the same as before. He still held his commission. His resignation was conditional in its terms, and he was entitled to hold on to his commission until the government had, in some way, manifested its aceptance of or acquiescence in those conditions. He was, therefore, no usurper, but was in reality in the exercise of the duties of the office, under color of right, at least. Under these circumstances, he was, by all the authorities, judge de facto, if nothing more. At all events, he was not a usurper. And if not a usurper, he was an officer either de facto or de jure, and for the purposes of deciding this motion, it matters not which; either is sufficient to sustain the record. Motion denied.