STEINBACK ET AL. *v.* THE STATE, EX REL. MADISON TOWNSHIP.

38  483
148  166
151  559

TOWNSHIP TRUSTEE.—*Public Funds.*—Where a township trustee deposits the public funds in a bank in his individual name, and overdraws his account, and uses the money so obtained to replace public funds which he has misapplied, the bank has no claim against the township.

SAME.—*Liability of Sureties.*—Where a new township trustee is elected and qualified, the former trustee is no longer an officer *de jure* or *de facto*, and the sureties on his official bond are not liable for his act in giving an obligation to a bank as trustee, to repay the amount of his account overdrawn in his individual name.

APPEAL from the Jefferson Common Pleas.

BUSKIRK, C. J.—The assignment of errors presents for our consideration and decision a large number of questions, but there is one leading and important question, the decision of which will be decisive of the cause. We shall not consider, in their order, the various questions that have been argued with so much ability by the counsel engaged in the cause, but we shall only state so much of the pleadings and the facts as shall be necessary to present, in an intelligent manner, the controlling and decisive question in the cause.

William C. Steinback was duly elected, at the April election of 1867, trustee of Madison township, Jefferson county, Indiana, for the term of one year.   On the 11th day of April, 1867, he took the oath of office prescribed by the constitution and laws of this State, and on that day he executed his official bond, conditioned according to law, with his co-appellants as sureties thereon, and entered upon the discharge of his duties as such trustee.   Steinback had a settlement with the board of county commissioners, as required by law, in March, 1868.   By that settlement he shows a balance in his hands of over two thousand seven hundred and thirty-one dollars.   But it was shown that prior to the expiration of his term of office, he had paid to persons entitled by law to receive it all of the above sum except the sum of three hundred and seventy-six dollars.   Of this sum his sureties paid three hundred and sixty-five dollars after he had gone out of office, but before the commencement of this action, leaving eleven dollars unpaid.   The sureties intended to pay and supposed they had paid the entire amount, but by some mistake in calculation the eleven dollars was unpaid.   During the time that Steinback acted as such trustee, he kept a bank account at the National Branch Bank of Madison, Indiana.   This account was kept in the name of W. C. Steinback; in that name he checked upon the bank.   He checked out of the bank six hundred and thirty dollars and seventy-nine cents more than he had deposited.   On the 9th day of April, 1868, the said trustee executed the following instrument:

"No. 8.                                               $630.79.

TRUSTEE'S OFFICE, MADISON TOWNSHIP,   }
JEFFERSON COUNTY, IND., April 9th, 1868. }

"This certifies that there is due to the National Branch Bank of Madison, from this township, six hundred and thirty dollars and seventy-nine cents, for money advanced to road and special school funds of Madison township.   Payable ninety days after date.        W. C. STEINBACK,

"Trustee of Madison Township."

Israel Fowler was elected trustee for said Madison township, as the successor of the said Steinback, at the April election of 1868. Fowler gave bond and was sworn into office, on the 7th day of April, 1868. The bond was approved by the county auditor on the 8th day of April, 1868. Fowler did not receive the books of his office until the 14th day of April, 1868. Steinback retained the books, but it does not appear that he transacted any business as trustee after the 9th of April. Steinback testified that he deposited in the said bank his own private funds, as well as those belonging to the township; that all the deposits were made in his own name, and that the most of the money which he checked out was applied to the payment of township liabilities, and the residue to his own uses; and that when he found that he was indebted to the bank, by reason of his overchecking his deposit account, he gave the note above set out as trustee. The books of the bank, as well as the official record of Steinback, showed that the deposit account with the bank was kept in the individual name of Steinback, and that all his checks on the bank were drawn by him in his own name, and not as trustee. The officers of the bank were permitted by the court to testify, over the objection and exception of the appellants, that the bank did not pay the checks on the individual credit of Steinback, but paid them on the faith and credit of the township.

Fowler, as township trustee, paid to the bank the amount of the note which had been given by Steinback, on the 9th of April, and this action was brought by him to recover the amount from Steinback and his sureties on his official bond. It is very clearly shown that Steinback, during his term of office, applied over nine hundred dollars of money belonging to the township to his private uses; that during his term of office he paid on township liabilities all of said money which he had misapplied except three hundred and seventy-six dollars; and that his sureties, after he had gone out of office, paid three hundred and sixty-five dollars, leaving due eleven dollars.

It thus appears that, having misapplied the public funds, Steinback repaid the amount to the township by his checks on the bank. We are required upon these facts to decide whether his sureties are liable upon his official bond. The question assumes a double aspect. We will consider it, first, without reference to the obligation given by Steinback, on the 9th day of April, and, secondly, with reference to such obligation.

We are very clearly of the opinion that the sureties of Steinback cannot be held liable for the misapplication of public funds which were subsequently, but before the commencement of this action, repaid by him. It surely can make no difference how he acquired the money with which he repaid the money that he had converted to his own use. If he had acquired the money dishonestly, and the township had received and retained the money, there could be no liability on his official bond. It would amount to a satisfaction and discharge of his liability. It was held by this court, in *Cook* v. *The State*, 13 Ind. 154, that where a treasurer was his own successor, and was a defaulter at the end of his first term, and, after he had qualified under his second term, he used funds which came into his hands during his second term to pay the balance against him at the end of the first, the sureties under the first bond were discharged, and those under the second were liable.

He discharged the liabilities of the township by checks on the National Branch Bank of Madison. The checks were paid by the bank, and it can make no difference whether the bank paid the checks upon the personal liability of Steinback, or on the credit of the township, or through ignorance of the fact that he had overdrawn his deposit account. Under the facts of the case, the bank had no right to rely upon the liability of the township. The bank account was with Steinback individually, and not as trustee; and if the bank permitted him to overdraw his account, it must look to him, and not the township. There was no liability on the part of the township. The bank is entitled to no equitable consider-

ation.    It is now claimed that the money deposited by Stein-back belonged to the township, and that the credit was given to the township, and not to Steinback.    The bank had no right to permit a public officer to deposit public funds in his own name, and to pay checks drawn in favor of persons who had claims against the township, when the checks were not signed by an officer, but by a private individual.

We are next to inquire whether the obligation executed by Steinback, as trustee, on the 9th day of April, 1868, created a valid and legal liability against the township.    The solution of this question will depend upon the answer to be given to two other questions; first, was Steinback at such time trustee of Madison township?    If he was trustee, had he the right to execute the note, and thereby create a legal liability against the township?

It is provided by the 5th section of the act (approved February 18th, 1859,) in reference to civil townships, that the trustee "shall hold his office for one year, and until his successor is elected and qualified."    1 G. & H. 637.

Section 3 of article 15 of the constitution reads as follows: "Whenever it is provided in this constitution, or in any law which may be hereafter passed, that any officer, other than a member of the general assembly, shall hold his office for any given term, the same shall be construed to mean, that such officer shall hold his office for such term, and until his successor shall have been elected and qualified."    1 G. & H. 54.

It is further provided in the 5th section of the above recited act, in reference to a township trustee, that, "before entering upon the duties of his office he shall take an oath or affirmation before some person authorized to administer the same, for the faithful performance of those duties, and execute a bond conditioned as in ordinary official bonds, with at least two freehold sureties, in a penalty of not less than double the amount of money which may come into his hands at any time during his term by virtue of his office, to the acceptance of the county auditor."

The sureties of Steinback were only liable for his acts

during his term of office; and when his "term of office" expired, their liability ceased.   His term of office continued for one year, and until his successor was elected and qualified.   It is conceded that Fowler was elected the successor of Steinback at the regular April election of 1868; that on the 7th day of April he took the oath of office, and executed a bond which was approved and accepted by the county auditor on the 8th day of April.   The term of office of Steinback expired the moment his successor was elected and qualified; and it makes no difference whether his successor actually took the possession of his office at the time he qualified or not.   His term commenced as soon as he qualified, and the liability of his sureties commenced at the time when he qualified.   The liability of the sureties of Steinback ceased at the moment of time when the liability of the sureties of Fowler commenced.   What was meant by the phrase "elected and qualified," as used in the above quoted section of the constitution?   The term elected is too well understood in our country to require any definition. The term qualified was not used in its ordinary or popular signification, as possessed of endowments or accomplishments, or intellectual capacity, or moral worth to discharge the duties of an office, but the framers of the constitution intended thereby that a person who had been elected to an office, and had taken the oath of office, and *given bond,* where a bond is required, was qualified and had the right to assume and discharge the duties of such office.   The acts to be performed depend upon the character of the office.   If a person has been elected a judge, he is qualified when he takes the oath of office; while officers who are required to give bond and surety have, in addition to taking the oath of office, to give bond with approved security; and when these things have been done, the person elected or appointed has qualified and is an officer *de jure.   The State, ex rel. Alsop,* v. *Husband,* 26 Ind. 308; *Plymouth* v. *Painter,* 17 Conn. 585.   When Fowler became an officer *de jure,* Steinback ceased to be an officer *de jure;* for where there is but one

office, there cannot be two officers *de jure,* or one officer *de jure* and an officer *de facto,* both in possession of the office at the same time. *Boardman* v. *Halliday,* 10 Paige, 223. The liability of the sureties of Steinback ceased when Fowler became an officer *de jure.* Suppose that Steinback had been elected his own successor, and had taken the oath of office, and had executed a new bond, with new and different sureties, could it be maintained, either on principle or by authority, that the sureties on his old bond would be liable for acts done after he had qualified under his new election? We think not. It was held otherwise in *Cook* v. *The State, supra.* But it is maintained by the appellee that Steinback was an officer *de facto* when he executed the note to the bank. If Fowler was then an officer *de jure,* Steinback could not have been an officer *de facto;* for, as we have already seen, where there is but one office, there cannot be an officer *de jure* and one *de facto* in possession of such office at the same time.

But if the position assumed was correct, it would not create any liability against the sureties of Steinback. The condition · of their bond was, that they would be responsible for the acts of Steinback for one year, and until his successor was elected and qualified, and their liability ceased at the moment of time when the liability of the sureties upon the bond of his successor commenced. If no successor had been elected to Steinback, or if Fowler, after having been elected, had failed to qualify, Steinback would have continued to be an officer *de jure,* and his sureties would have been liable for his acts.

Having reached the conclusion that Steinback ceased to be an officer *de jure,* and that the liability of his sureties terminated when his successor was qualified, it is not necessary for us to determine in what character he acted from the time when his successor was qualified until he got the possession of the books of the office and entered upon the discharge of the duties of such office.

But in support of the proposition laid down, that Steinback ceased to be an officer *de jure* when his successor was

elected and qualified, and that the liability of his sureties terminated at such time, and as to the true line of distinction between an officer *de jure,* an officer *de facto,* and a mere usurper, we will refer to several authorities, and quote from one.    1 Burrill Law Dict. 435; 2 Kent Com. 295; *Wilcox* v. *Smith,* 5 Wend. 231; *Pritchett* v. *The People,* 1 Gilman, 525; *Boardman* v. *Halliday,* 10 Paige, 223; *Brown* v. *Lunt,* 37 Maine, 423.

The true distinction between officers *de jure, de facto,* and a mere usurper, is well stated in *Plymouth* v. *Painter,* 17 Conn. 585, where the court say:

"An officer *de facto* is one who exercises the duties of an office, under color of an appointment or election to that office.    He differs, on the one hand, from a mere usurper of an office, who undertakes to act as an officer without any color of right; and, on the other, from an officer *de jure,* who is, in all respects, legally appointed and qualified to exercise the office.    These distinctions are very obvious, and have always been recognized."

Again, it is said:    "It is a well settled principle, that the acts of an officer *de facto* are valid, so far as the rights of the public or third persons who have an interest in the acts done are concerned; and that the title of such an officer, or the validity of his acts as such, cannot be indirectly called in question in a suit to which he is not a party; and this principle applies as well to judicial as ministerial officers.    This doctrine has been established from the earliest period, and repeatedly confirmed, by an unbroken current of decisions down to the present time."

Again, it is said:    "The acts of a mere usurper of an office, without any color of title, are undoubtedly wholly void, both as to individuals and the public.    But where there is a color of lawful title, the doings of an officer, as it respects third persons and the public, must be respected, until he is ousted on a *quo warranto,* which is the appropriate proceeding to try the validity of a title to an office, and in which it would be necessary for him to show a complete

title in all respects; although in a suit against a person for acts which he would have an authority to do only as an officer, he must, in order to make out a justification, show that he is an officer *de jure;* because the title to the office, being directly drawn in question, in a suit to which he is a party, may be regularly decided; so where he sues for fees, or sets up a title to property, by virtue of his office, he must show himself to be an officer *de jure.*"

The fact that the acts of an officer *de facto* are valid as to the public and third persons, in no manner affects the question of the liability of the sureties on the official bond of Steinback. If we are correct in the views expressed, Steinback had no sureties for any act done subsequent to the time when Fowler qualified. It frequently happens that a person who acts as an officer *de facto* has no bond or sureties. *Brown* v. *Lunt,* 37 Maine, 423, and authorities cited.

We are of the opinion that Steinback had no power or authority as an officer *de jure* to create any liability on the township on the 9th day of April, and that, consequently, his sureties are not liable for such act.

We do not deem it necessary to decide whether, and for what purposes, a township trustee may lawfully borrow money on the credit of the township; but, conceding that Steinback was an officer *de jure,* and had the right to borrow money on the credit and for the use of the township, on the 9th day of April, 1868, we are unable to see how this would better the condition of the appellee; for surely he would have no right to borrow money on the credit of, or create any liability against, the township for his own private purposes. The transaction amounted to that, and no more. The trustee appropriated to his own use public funds; he repaid the sums thus dishonestly appropriated by money obtained from the bank on his private checks. By so doing, he discharged his liabilities to the public and released his sureties, but created an individual liability to the bank; and after his term of office had expired, he attempted to pay his individual debt by creating a liability on the part of the

township. This he cannot do. To hold otherwise, would be a fraud on sureties, and encourage dishonesty in public officers.

There is and can be no question as to the liability of Steinback; and we are equally well satisfied that his sureties cannot be held liable for any act done by him after the expiration of his term of office.

We are satisfied that the court erred in overruling the motion of the appellants for a new trial, at least so far as the sureties are concerned.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.

*C. E. Walker,* for appellants.

*H. W. Harrington* and *C. A. Korbly,* for appellee.