CHARLES J. SOUDANT AND WIFE vs. FRANCIS M. WADHAMS.

A declaration in trespass charged the defendant with breaking and entering into the plaintiffs' dwelling-house at eleven o'clock at night, and seizing and carrying away certain liquors. The defendant pleaded that he was commanded by A, a lawful constable of the town, to assist him in the service of a lawful warrant placed in the hands of A for the seizure of the liquors, and that the acts complained of were acts done by him in rendering such assistance. The

plaintiffs by their replication denied that *A* was at the time a lawful consta-
ble, because he had not given the bond required by law before entering upon
his duties.   The defendant rejoined that though he had not given the bond,
yet he had been lawfully elected a constable, and had exercised the office, and so
was an officer *de facto,* and that therefore he might lawfully submit to his
command.   The plaintiffs demurred to this rejoinder.   Held—

1.  That the defendant was justified in assisting *A* by the character of the
latter as a *de facto* officer.
2.  That the issue presented was wholly whether *A* was such *de facto* officer
and the defendant justified by reason thereof, and that the plaintiffs, if they
desired to take advantage of the fact that the service was at an unlawful hour
should have new assigned and set up that fact in their replication.

And held that it made no difference that the defendant was one of the persons
on whose complaint the process served by the officer was issued.

TRESPASS *qu. cl. fr.,* brought to the Superior Court in Litch-
field County.   The declaration was as follows :

That on the 11th day of December, 1875, the plaintiffs
were possessed of the following described tract of land in
the town of Goshen with a dwelling-house thereon, in which
dwelling-house they resided on the said day, to wit : [describ-
ing the premises ;] and that on said 11th day of December
the defendant with force and arms broke and entered upon
said tract and into said dwelling-house at a late hour of the
night, to wit, about eleven o'clock at night, and greatly
disturbed and annoyed the plaintiffs in their occupancy
thereof, and then and there remained in said house a long
time and made great noise therein, and with like force and
arms did go into the cellar of said house and seize and carry
away therefrom certain goods and chattels belonging to the
plaintiffs, to wit : [describing various casks of liquors ;] all
of the value of three hundred and twenty-five dollars, and
there coverted and disposed of said goods to his, the defen-
dant's, own use ; all of which is to the damage of the plain-
tiffs the sum of five hundred dollars, to recover which with
just costs this suit is brought.

The further pleadings are sufficiently stated in the opinion.
The case was reserved for the advice of this court upon a
demurrer of the plaintiffs to the rejoinder of the defendant.

*H. B. Graves,* for the plaintiffs.

*G. C. Woodruff,* for the defendant.

PARDEE, J.   Under a statute three residents of the town
of Goshen, of whom the defendant was one, upon oath
informed a justice of the peace of their belief that C. J. Sou-
dant, one of the plaintiffs, had within the month, in violation
of law and without any license therefor, kept and sold intox-
icating liquors in a house in the town occupied by him;
thereupon the justice of the peace issued a warrant to any
constable of the town to enter and search the premises of
the plaintiffs, seize the liquors thereon found, and hold the
same until disposed of pursuant to law.   By virtue of this
warrant one Adams, a constable of the town, accompanied by
the defendant, who acted as his assistant upon his command,
entered upon the premises, and seized and carried away
certain liquors there found.   The plaintiffs then brought this
action of trespass to the Superior Court for Litchfield County,
alleging that the defendant with force and arms broke and
entered into their house at the hour of eleven o'clock at night,
remained a long time and made great noise therein, and
seized and carried their liquors therefrom.   The defendant
filed a plea in which he alleged that he acted as the assistant
and servant of a duly elected constable.   The plaintiffs
replied that Adams was not at the time of the seizure a law-
ful officer, for the reason that he had not then given the bond
required by the statutes for the faithful discharge of his duties,
and therefore had no authority to act himself or to compel the
defendant to act; also, that upon the hearing the justice of
the peace, for the reason aforesaid, upon motion of the plain-
tiffs, had abated and dismissed the process and ordered the
return of the liquors; that the defendant was a party to the
complaint and process, and that the judgment of the justice
of the peace had never been appealed from, reversed or set
aside, and remained in full force.

To the replication the defendant rejoined, alleging that
although Adams had not given any bond, yet that in the ser-
vice of the warrant and in commanding the assistance of the
defendant he was an officer *de facto,* and as the defendant
verily believed an officer *de jure*; and that after assisting
him he left the liquors in his hands as such constable to be

disposed of according to law. To this rejoinder the plaintiffs demurred.

The advice of this court is asked as to the judgment to be rendered in the cause.

In *Plymouth* v. *Painter*, 17 Conn., 585, this court said as follows : " An officer *de facto* is one who exercises the duties of an office under color of an appointment or election to that office. He differs on the one hand from a mere usurper of an office, who undertakes to act as an officer without any color of right, and on the other from an officer *de jure*, who is in all respects legally appointed and qualified to exercise the office. These distinctions are very obvious and have always been recognized. It is not in all cases easy to determine what ought to be considered as constituting a colorable right to an office, so as to determine whether one is a mere usurper, but it is not necessary in the present instance to examine the cases on that point, since, according to all the authorities, here was undoubtedly a fair color of right in the person acting as a grandjuror, to exercise that office, whether he was legally qualified to do so or not. He was plainly more than a mere usurper: he was legally appointed by the town to the office, and was eligible to such appointment, and, claiming a right to act under it, took in due form the oath prescribed by the law for the office. These would, confessedly, be sufficient to confer on him a perfect legal title to the office, but for what intervened between the appointment and the taking of the oath. Whatever may be the effect of what thus intervened upon the question whether he could afterwards rightfully become qualified for the office by taking the oath, it is clear that the administration of it, in connection with his previous appointment, gave him at least a color, pretence, or show of right to exercise the office ; which is all that is necessary to constitute him an officer *de facto*. Even if his previous refusal to take the oath legally disqualified him from subsequently doing so, this effect was not so palpable and obvious as to deprive him of a fair color of right to exercise the office. There was an observance of all the legal forms requisite to enable him to act as such officer ; and

this clearly constituted a colorable title or apparent right. It is a well settled principle that the acts of an officer *de facto* are valid, so far as the rights of the public or third persons who have an interest in the acts done are concerned; and that the title of such an officer, or the validity of his acts as such, cannot be indirectly called in question in a suit to which he is not a party; and this principle applies as well to judicial as to ministerial officers. This doctrine has been established from the earliest period, and repeatedly confirmed by an unbroken current of decisions down to the present time." In *The State* v. *Brennan's Liquors*, 25 Conn., 278, the court said as follows: " It is admitted in the plea that Nichols, who served the warrant as a constable of the town of Cheshire, was duly appointed a constable by the town, and it is not denied but that he had been duly sworn, and possessed every qualification necessary to enable him to perform the duties of that office, except that of having given bond in pursuance of the requirement of a recent statute. He therefore, in serving the process as a constable, acted *colore officii*, and was an officer *de facto*. Now the principle recognized and established by recent and repeated decisions of this court is, that the acts of an officer *de facto* are valid so far as the public and third persons who have an interest in them are concerned, and their validity cannot be indirectly called in question in a suit in which the officer is not a party. It is enough that he acts under color of an appointment by that body which alone has the power to make it. And this, we have said, is too well settled to be any longer a debatable point." In *The State* v. *Carroll*, 38 Conn., 449, the court said: " An officer *de facto* is one whose acts, though not those of a lawful officer, the law upon principles of policy and justice will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like."

Upon these authorities it is quite certain that the defendant, knowing that Adams was exercising the office of a constable

of the town of Goshen under such apparent circumstances of continuance and reputation as would lead men to presume that he was the officer he assumed to be, could submit to his command without instituting an inquiry into his title; and the law will hold the acts of Adams valid, by holding him to be an officer *de facto*, so far as to protect the defendant against this action for having obeyed him; and this irrespective of the question whether or not the defendant was a party to the original proceeding.

The plaintiffs insist that even if Adams was a legally elected and qualified officer, his entry in the night season was unlawful, and that thus the defendant remains without justification.

The declaration is in one count, and is so framed that it may be understood as alleging that the defendant assisted an usurper of the office of constable in serving a lawful warrant for search and seizure, setting out the hour of the night, the noise and the disturbance, as attendant circumstances of aggravation for the purpose of increasing the damages; or as charging that he assisted a duly elected and qualified officer in serving a lawful warrant at an unlawful hour. In his plea the defendant justified his act as having been done in obedience to the command of an officer having authority to compel his assistance. The plaintiff replied that Adams had not given the statutory bond, and therefore had no authority either to act himself or compel the defendant to act. The defendant rejoined that although Adams had given no bond, he had been legally elected to the office of constable, had exercised it, was an officer *de facto*, and as the defendant verily believed an officer *de jure*, and therefore he might lawfully submit to his command. The plaintiffs answered that the matters and things pleaded in the rejoinder were insufficient in the law and put themselves upon the court for trial; and the defendant joined issue.

When it became apparent to the plaintiffs that the defendant interpreted the declaration as charging him with assisting an usurper, and in his plea and rejoinder made answer only to that, the plaintiffs, instead of uniting with him in narrow-

ing the issue to that single point, should have new assigned and have alleged that the action was for assisting in the service of a lawful warrant at an unlawful hour; thus imposing upon the defendant the duty, and giving him the privilege, of answering the trespass as it is intended to be charged. The pleadings would then perform their office in giving precise information both in allegation and answer. 1 Chitty's Pl., 634. Sir E. V. Williams, in his notes to Saunders' Reports, Vol. 1, 492, cites a case in which the plaintiff was properly arrested at first, but was detained after he had been duly discharged from the defendants' custody by the direction of the plaintiff in the original suit, and thereupon brought an action of assault; the defendant having justified under the writ in the original suit it was held that the plaintiff must new assign by his replication.

We think that the issue as to the time of service was not presented by the pleadings.

We advise the Superior Court that the rejoinder is sufficient.

In this opinion the other judges concurred.