## SUPREME COURT.

## DANIEL D. CONOVER agt. CHARLES DEVLIN.

A *return* to a writ of *certiorari* may be made by a justice of this court, and is valid, although his official term has expired. And this is so, although the writ is served after the judge has gone out of office. (*As a decision on the point in the same way, see Harris* agt. *Whitney,* 6 *How. Pr. R.* 175.)

In a proceeding in this case, under the statute for the delivery of the books and papers to the plaintiff Conover, who claimed the office of street commissioner, the judge who then presided, came to the conclusion that Conover was entitled to the possession thereof, (and ordered a delivery to him as street commissioner *de facto,*) on the ground that he had been in the possession of the rooms where the business of the office was usually transacted, a part of two days, claiming a right to such possession, and to perform the duties of the office, and actually performing an official act, under color of an appointment by the governor. But at the same time admitting that subsequent to Conover's removal, and prior to the proceedings before the judge, Devlin, the defendant, entered the same official rooms, and took possession of the books and papers, under color of an appointment by the mayor, with the consent of the board of aldermen, and then had possession, and claimed a right to the possession of such books and papers, and to the office, under the appointment by the mayor.

*Held,* that on these facts, it was error to make an order for the delivery of the books and papers to Conover, on the ground alone that he was street commissioner *de facto,* without an examination or determination as to his title *de jure.*

Although it was not a proceeding instituted for the purpose of examining or determining the right or title to the office as between Conover and Devlin, or the question whether the governor or the mayor had the legal right to fill the vacancy, nor could any decision or order made in it, settle the right or title of that question;

*Held,* nevertheless, that when it appeared before the judge in that proceeding, that

there were two claimants to the office, and of the books and papers, under antagonistic appointments, he chose, instead of dismissing the proceedings on the ground that Conover's title to the office was not clear and free from reasonable doubt, to proceed and decide that Conover had a right to the possession of the books and papers, and order their delivery to him, he could not on any principle or precedent so decide and order, without an express adjudication for the purpose of that proceeding, that the governor had the right to make the appointment, not the mayor; and that Conover was entitled to the office *de jure*. Besides, upon the facts stated, which was the officer *de facto*? At the time of the proceedings before the judge, the circumstances did not permit either Conover or Devlin to be recognized in law as officers *de facto*, because those circumstances had not permitted either of them, as against the other, to acquire the reputation of being the rightful and legal street commissioner; there then being an open and notorious contest between them for the possession of the books and papers, &c., nor had the claims of either, as against the other, been acquiesced in by the public, so as to call upon the law to call either of them the street commissioner *de facto*, for the protection of the public. It was a simple question of law, who had the appointment—the governor or mayor and aldermen.

*New - York Special Term*, 1858.
MOTION for a certiorari.

SUTHERLAND, Justice. Mr. JAMES T. BRADY, on behalf of Charles Devlin, moves for a *certiorari*, to be directed to the Hon. CHARLES A. PEABODY, late one of the justices of this court, directing him to certify to this court the proceedings had before him in this matter, and the record thereof, together with the testimony taken before him, and the orders made by him, and his decisions and acts in such proceedings, that the same may be reviewed by this court.

The motion is founded on the verified petition of Charles Devlin, setting forth such proceedings, &c. Mr. D. D. FIELD, on behalf of Mr. Conover, appears and opposes the motion on the ground, and only on the ground, that Mr. Peabody's term of office having expired, the *certiorari* cannot go to him; and if the writ were issued, being out of office, his return thereto would be a nullity; citing and relying on the decision of Judge HARRIS, in *Peck* agt. *Foot and wife*, (4 *Howard, Pr. R.* 425.) This case is certainly in point; and if it contains a correct ex-

position of the law, must be held conclusive against this motion.

But as I could not see how the fact of an officer going out of office could operate as a correction of his errors while in office; and as it might be quite important for the party complaining of such errors to have them corrected, notwithstanding the officer might never have a chance to repeat them, I have been led to look further for the law on this point. In *Harris and others* agt. *Whitney and others*, (6 *Howard Pr. R.* 175,) decided at the Chenango general term, 1851, (MASON, SHANKLAND *and* MONSON, *Justices*,) this case of *Peck* agt. *Foot* was fully considered, and the court were unanimous in the opinion that the case was wrongly decided, and ought not to be followed. It is true, that in *Peck* agt. *Foot*, the *certiorari* was served on the judge before he went out of office; and in *Harris and others* agt. *Whitney and others*, the writ was served on the judges *after* they went out of office; yet as Judge HARRIS put his decision on the ground, that the "return must be an *official* act, performed under the sanction of an *official* oath," and that as the return, having been made by a "mere private citizen, wholly divested of the official power and responsibility with which he had been clothed while in office," must be regarded as a mere nullity—it is clear that his decision was directly overruled in *Harris* agt. *Whitney*. In *Bacon's Abr. Certiorari F.*, it is said: "If the person who ought to certify a record—as a justice of the peace, who hath taken a recognizance; or a judge of *nisi prius*, who hath taken a verdict; or a coroner, who hath taken an inquest—die with the record in his custody, the *certiorari* may go to his executor," citing, 2 *Keb.* 750; *Cro. Jac.* 669; *Dyer,* 163; *Rast. Ent.* 439; 2 *Inst.* 424; 2 *Roll. Abr.* 629. In *Welch* agt. *Jay*, (13 *Pickering R.* 477, 481, 483,) it was held, that at common law, a valid return could be made by a public officer after the expiration of his term of office. (*See also Clerke* agt. *Wilkins*, 1 *Salk. R.* 322; *The King* agt. *The Sheriff of Middlesex*, 4 *East R.* 604.)

There is no doubt, therefore, if the *certiorari* applied for in

Conover agt. Devlin.

this case should issue, that Judge PEABODY could make a valid return to it, and such a return as this court could act upon and review, although his official term has expired; and I think it equally clear that it would be his duty to make a return. Although I have thus disposed of the only objection to the allowance of the writ made before me by the counsel of Mr. Conover; yet, as the writ of *certiorari* is not a writ of right, but a writ to be granted or refused in the sound discretion of the court, and as it has been frequently refused, where it was clear there had been no error, or where great public inconvenience might ensue from its being issued, I have looked into the proceedings before Judge PEABODY with reference to these considerations.

I do not see how the public can ·be injured by a review of these proceedings. The public are certainly interested in having the question which of the two is street commissioner, Mr. Conover or Mr. Devlin, finally settled in a legitimate way, in the proceeding by *quo warranto* already instituted for that purpose, as soon as possible; but until the right and title to the office shall be so settled, I cannot say that it will make any difference to the public which exercises the duties of the office or has the possession of the books and papers belonging to the office.

Upon the point whether it is probable there was any error in the proceedings before Judge PEABODY, I have looked not only into the petition of Mr. Devlin, upon which the motion is made, purporting to set forth such proceedings, but also into the report of the case, (24 *Barb.* 588,) for the grounds upon which the learned judge put his decision and made the order for the delivery of the books and papers to Mr. Conover.

In his opinion, after stating the facts to be: that Joseph S. Taylor, the late incumbent of the office, was elected in November, 1855, for the term of three years from the 1st of January, 1856; that he entered and continued in office until June 9th, 1857, when he died; that on the 12th day of June, Mr. Conover was appointed by the governor to fill the place, and on the 13th of June, took the oath of office required by law, and

filed it with the proper officer; and also on the same day executed and filed with the proper officer, an official bond, with two sureties, in the penal sum of ten thousand dollars; that he then proceeded to the rooms belonging to the city, occupied as the office or place of business of the street commissioner, entered them, claimed that he was street commissioner, exhibited his commission to the employees, asserted authority over · them and the business of the office, and locating himself at a desk, offered to perform, and did *in one instance* at least, *perform* official business as street commissioner, remaining there, claiming to be in possession of the place and business by virtue of his office, until the usual hour of closing the place for the day, when he left, as the place was closed; that he returned the next day, resumed his place and official position, and remained some time there at his desk at the place properly occupied by the head of the department, as he claimed to be; that in the course of the day he was forcibly removed from the rooms; that the next day he returned, and was again removed by the same person; that the deputy street commissioner, rightfully in possession of the books and papers, and in charge of the business while the vacancy in the office continued, refused throughout the time of the applicant's (Mr. Conover's) presence in the office, to recognize his claims to official character, and withheld from him the actual manual control of the books and papers belonging to the office; that on the 16th of June, after Mr. Conover's last removal from the premises, Mr. Devlin having received the appointment of the mayor, with the consent of the board of aldermen, filed in the proper place his official oath and bond, duly approved, entered the rooms, and took possession of the books and papers, claiming to be the street commissioner, by virtue of his appointment, and thence hitherto had continued, and that upon these facts, Mr. Conover had demanded an order and warrant by which he should be put in possession of the books and papers. The learned judge then proceeds, and states the reasons and grounds upon which he had come to the conclusion, that

Mr. Conover was entitled to the possession of the books and papers, and to the order for their delivery to him.

If I do not entirely misapprehend this opinion, his reasoning is briefly this :—That although the only question to be decided on the application of Mr. Conover under the provisions of the statute, was whether he was the successor to the office of street commissioner ; yet, that neither Conover's title to the office under the appointment of the governor, nor Devlin's title under the appointment of the mayor, could be examined or inquired into in that proceeding, further than to see whether, if Conover was in possession of the office, he had color of title ; and then, holding, on the facts as previously stated, that Conover *was* in the possession of the office of street commissioner, under color of title, when forcibly removed from the *rooms* used as the street commissioner's place of business ; there being no pretence that he had forfeited or *resigned* any right he had thus acquired by his possession, under color, &c. ; that he was then street commissioner *de facto*, and *as such* was entitled to the books and papers, without an examination of, or passing upon the title *de jure* of either Conover or Devlin, under their respective antagonistic appointments ; holding that such examination of their respective titles *de jure*, could only be had in a direct action or proceeding by *quo warranto* for that purpose ;—thus coming to the conclusion, that Conover was entitled to the possession of the books and papers, and making an order for their delivery to him, on the ground that he had been in the possession of the rooms where the business of the office was usually transacted, a part of two days, claiming a right to such possession, and to perform the duties of the office, and actually performing one official act, under color of an appointment by the governor ; at the same time admitting that subsequent to Conover's removal, and on the 16th of June, Devlin entered the same official rooms, and took possession of the books and papers, under color of an appointment by the mayor, with the consent of the board of aldermen, and then had possession of the books and papers, claiming a right to

such books and papers, and to the office, under the appointment by the mayor.

Now it appears to me, that on these facts, nothing could be more erroneous, or farther outside of the remedy intended by the provisions of the statute, than to make the order for the delivery of the books and papers to Conover, on the ground alone that he was street commissioner *de facto*, without any examination or determination as to his title *de jure*.

True, it was not a proceeding instituted for the purpose of examining or determining the right or title to the office as between Conover and Devlin; or the question whether the governor or the mayor, had the legal right to fill the vacancy, nor could any decision or order made in it, settle the right or title of that question; yet, it is nevertheless true, that when it appeared before him in that proceeding, that there were two claimants to the office, and of the books and papers, under antagonistic appointments; if Judge PEABODY, not deterred by the great interest which the public had in having the books and papers delivered to the right person, nor by any doubt thrown around the question of title, or of the right of appointment by the arguments of counsel, or by the notorious division of an intelligent public opinion upon the question; chose, instead of dismissing the proceedings on the ground that Conover's title to the office was not clear and free from reasonable doubt, to proceed and decide that Conover had a right to the possession of the books and papers, and order their delivery to him; he could not on any principle or precedent, so decide and order, without an express adjudication for the purpose of that proceeding, that the governor had the right to make the appointment, not the mayor; and that Conover was entitled to the office *de jure*.

If, on the facts, the learned judge was right in holding Conover to be the street commissioner *de facto*, he certainly was entirely mistaken as to the character and extent of the rights given him by law, as such *de facto* officer only. The distinction between an officer *de facto*, one *de jure*, and a mere usurper, is recognized by the law for the *benefit of the public*

*and of third persons,* and of the officer only in suits where he is not a party. A person unquestioned, claiming, entering upon, and exercising the duties of an officer under the forms or color of an appointment, or of an election; or a person without even the color of an election or appointment, per-mitted by the government for a length of time, unquestioned, to perform the duties of an office, *acquires the reputation of being an officer in fact,* though he may not be an officer in point of law. The public and third persons cannot be supposed to know, or to investigate his title to the office, whether he has complied with the forms of law, taken the oath of office, filed a bond, &c.; or even, whether, if appointable, the governor or the mayor has the appointment. The public and third per-sons, in their dealings with each other, and with him as such acting officer, have, therefore, a right *to act upon such reputa-tion,* and as *to them,* he is a good officer, whether he has a legal title to the office or not, so far as they are interested in his acts.

But the officer himself is bound to know whether he has a good title to the office; and if he undertakes to perform its duties without legal right, he does so at his peril.

Hence the rule of law, that the acts of an officer *de facto* are valid as to third persons who may be interested in his acts, *though invalid as to himself.* (*The People* agt. *Collins,* 7 *John.* 551; *McKinstry* agt. *Farmer,* 9 *John.* 135; *Wilcox* agt. *Smith,* 5 *Wend.* 234; *Plymouth* agt. *Painter,* 17 *Conn. R.* 585; *McGregor* agt. *Balch,* 14 *Vermont R.* 428; *Gilmore* agt. *Hall,* 4 *Pickering,* 257; *McKim* agt. *Somers,* 1 *Pennsyl. R.* 297; *Fowler* agt. *Bebee,* 9 *Mass. R.* 231; *Douglass* agt. *Wickmire,* 19 *Conn.* 489; *Green* agt. *Burke,* 23 *Wend.* 490.)

But this rule of law is established for the benefit of the public, not of the officer. It confers on him no rights, ab-solves him from no responsibility. If sued for money re-ceived by him under color of his office, it is no defence that he was only an officer *de facto.* (*United States* agt. *Maurice,* 2 *Brockenbrough U. S. C. C. R.* 96.) So, also, if an action is brought against him for malfeasance or misfeasance in office. (*Neal*

agt. *The Overseers*, 5 *Watts R.* 539.) If he undertakes to re-
cover by law the fees of his office or his salary, he must prove
his legal title to the office, and to its fees or salary. (*Neal* agt.
*The Overseers*, 5 *Watts R.* 539 ; *Biddle* agt. *The County Bank*,
7 *S. and R.* 392, &c. ; *Plymouth* agt. *Painter*, 17 *Conn.* 585.)

If he undertakes to justify an official act complained of, he
must aver and prove that he was legally an officer duly elected
or appointed, and qualified to act. (*Green* agt. *Burke*, 23 *Wend.*
490 ; *Blake* agt. *Sturtevant*, 12 *N. H. R.* 567 ; *Cummings* agt.
*Clarke*, 15 *Vermont R.* 653 ; *Colburn* agt. *Ellis*, 5 *Mass.* 427.)

It is clear, therefore, that independent of the express words
of the provision of the statute under which these proceedings
were had, which gives the remedy only to the successor, mean-
ing of course the person legally appointed or elected, and
qualified to take the office, and with it the books and papers
belonging to it, that Mr. Conover was not entitled to the or-
der for the delivery of the books and papers, upon the ground
that he had shown that he was the street commissioner *de
facto*, only, or without averring and proving that he had been
legally appointed street commissioner and qualified. I have
thus far assumed that the facts upon which the order was
made showed *Conover to be, as to third persons,* an officer *de facto.*
But is this so ? On those facts, was either Conover or Devlin
street commissioner *de facto, at the time* these proceedings were
instituted before Judge PEABODY ? What are the facts ? On
the 12th of June, Conover was appointed by the governor.
On the 13th, he took the oath of office, and executed his
official bond, and filed it. On the 16th of June, Devlin was
appointed by the mayor, took the oath of office, and filed his
official bond, duly approved. The proceedings before Judge
PEABODY were commenced on the 19th of June. Conover
had been in the rooms or place of the official business, for a
part of two days, before the 16th of June, claiming a right to
the office, and to the books and papers, and doing, as he
claimed, one official act, he was then ousted. On the 16th of
June, on Devlin's appointment by the mayor, he came into
the same rooms, and took possession of the books and papers,

Conover agt. Devlin.

and had them when the proceedings were commenced before Judge PEABODY, and held them until Judge PEABODY made his order, claiming to be the street commissioner. Thus, at most, *at the time Conover made his application* to Judge PEA-BODY, neither Conover or Devlin had been in possession of the rooms or official place of business, under claim and color of their respective appointments, or had performed the duties of the office for more than two or three days. There must be some color to the claim of right to the office; or without such color, a performance of official duties, and an acquies-cence for a length of time that will raise a presumption of colorable right, to authorize a person to be recognized as an officer *de facto*. (*McGregor* agt. *Balch*, 14 *Vermont R.* 29; *Plymouth* agt. *Painter*, 17 *Conn.* 585; *Tucker* agt. *Aiken*, 7 *N. H. R.* 131; *Wilcox* agt. *Smith*, 5 *Wend.* 234.)

Now, at the time of these proceedings before Judge PEA-BODY, had either Conover or Devlin color of office, or had either exercised the functions of the office, so as to be recog-nized by the law as an officer *de facto?* One of them had the right and title to the office, and to the possession of the books and papers; which of them had this right, was the question. There cannot be two officers *de facto*, any more than two officers *de jure*, at the same time, to the same office. Which was the officer *de facto?* What became of the color of title of either, within the meaning of the phrase, as applied to officers *de facto*, when the one claimed under an appointment of the governor, and the other under an appointment of the mayor, the same office at the same time, an open and notorious con-test having taken place between them for the official rooms, and books and papers, under their respective hostile appoint-ments, from the time of their respective appointments?

One of them, and only one of them, had the *legal* right or title to the office or to the books and papers; which, was not then settled nor is it settled yet. At the time of the proceed-ings before Judge PEABODY, the circumstances did not per-mit either of them to be recognized in law as officers *de facto*, because those circumstances had not permitted either of them,

Conover agt. Devlin.

as against the other, to acquire the reputation of being the rightful and legal street commissioner; nor had the claims of either, as against the other, been acquiesced in by the public, so as to call upon the law to call either of them the street commissioner *de facto*, for the protection of the public.

I,t was a simple question of law who had the appointment, the governor or the mayor and aldermen; and the nature of the question, and the open and notorious hostile contest which took place under their respective hostile appointments had not, at the time Judge PEABODY made his order in this matter for the delivery of the books and papers, given either of them a chance, as against the other, to acquire the reputation of being the legal officer, or to inspire public confidence in the one rather than in the other, as the real, legal street commissioner.

Unless, therefore, I should hold that Mr. Conover's title to the office, and to the possession of the books and papers, as shown in the proceedings before Judge PEABODY, was so clear and free from doubt that Judge PEABODY was at once justified in making the order for the delivery of the books and papers to him by Mr. Devlin, I ought to allow the writ of *certiorari* asked for, *on the ground* that there is probable cause for believing that there was error in those proceedings.

Certainly, if the order for the delivery of the books and papers could not legally have been made without passing upon the respective legal titles of the parties to the office; a question of such magnitude and interest to the public and to the parties, and which has been so learnedly and ably discussed, not only in these proceedings, but in other legal proceedings, and which has not yet been decided; I ought not to deny Mr. Devlin a right to review the proceedings in which that order was made.

I have shown, I think, that such order could not rightfully have been made without a clear, legal title in Conover to the office, and without an adjudication to that effect by Judge PEABODY, for the purposes of those proceedings.

The *certiorari* is allowed.