WILLIAM THOMPSON and WILLIAM ELLIS, Plaintiffs in Error, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

*Court of General Sessions — indictment found in — removal to Oyer and Terminer — waiver — Title of officer — when cannot be called in question collaterally.*

Persons indicted in the Court of General Sessions for the county of New York have no vested right to be tried in that court, either before or after plea; and the indictment may, by an order of said court, be transferred to the Court of Oyer and Terminer.

After a prisoner has been arraigned in the Court of Oyer and Terminer, and, after a plea of not guilty, been convicted, it is too late for him to object that the indictment was found in the Court of General Sessions, and was, without his consent, transferred to the Oyer and Terminer.

Where a panel of jurors have been duly selected by the commissioner of jurors duly appointed by the mayor of the city of New York under an act of the legislature, a challenge to the array, on the ground that the act under which the appointment was made was unconstitutional, cannot be sustained. The validity of the acts of an officer *de facto*, cannot be questioned in a collateral proceeding between other parties.

Writ of error to the Court of Oyer and Terminer to review the conviction of the plaintiffs in error of murder. The plaintiffs in error were indicted for murder in the Court of General Sessions for the city and county of New York. Subsequently, and after issue joined, indictment was, against the wishes of the prisoners, transferred to the Court of Oyer and Terminer.

*Wm. F. Kintzing*, for the plaintiffs in error. In the case of a conviction of a capital offense in the Court of General Sessions an appellate court has, and it is its duty, to review the whole case *de novo* and do substantial justice. It has the power to reverse the judgment, in case of an erroneous ruling, without any excep-

tion. (Session Laws, 1855, chap. 334, §§ 3 and 4.)· An appellate court has no such power in reversing a conviction obtained in the Court of Oyer and Terminer, unless there be an exception, and it has no power to reverse a judgment upon the facts, no matter how unjust may be the verdict. (*People* v. *Thompson*, 41 N. Y., 1; *McKee* v. *People*, 36 id., 113; *Quimbo Appo* v. *People*, 20 id., 531.) The prisoners have a vested right to be tried in the Court of General Sessions, issue having been joined upon the indictment, and the court had no right to transfer the indictment, thereby depriving them of certain privileges conferred by the act of 1855.

*Danl. J. Rollins, Jr.*, for the defendants in error.

DAVIS, P. J.:

If the power of the Court of General Sessions to send the indictment found in that court to the Oyer and Terminer for trial were questionable (which it does not seem to us to be), yet the plaintiffs in error are not in position to raise any question on that subject, because it appears by the record that on being separately arraigned on the indictment in the Court of Oyer and Terminer they each demanded a trial upon the indictment and each pleaded not guilty thereto, making no question as to the power and jurisdiction of the Oyer and Terminer to try the indictment. They should have raised the question of the jurisdiction of the Oyer and Terminer on the ground of the informality or irregularity of the proceedings in sending the indictment to that court, or of the supposed want of power in the Sessions so to do, by plea or motion, before demanding trial in the Oyer and Terminer and taking issue in that court. The power of the Court of Oyer and Terminer to hear, try and determine all crimes and misdemeanors is general, and whenever an indictment regularly found by a grand jury of the county, and apparently regularly ordered from the General Sessions into the Court of Oyer and Terminer for trial, is moved and tried in the latter court, it is too late for the indicted parties to raise any question affecting the jurisdiction of the Oyer and Terminer, on the ground now suggested, after proceedings to take issue and demand trial, and after conviction upon such trial. We are, however, convinced that the General Sessions had power to send the indictment to the·

Court of Oyer and Terminer for trial, at any stage before an actual trial had commenced in that court, for the reasons suggested by BARRETT, J., in his opinion on the motion for a stay of proceedings herein. *

Persons indicted in the Sessions have no vested right to be tried in that court, either before or after plea, because under section 3 of chapter 337 of the Laws of 1855, as amended by chapter 330 of the Laws of 1858, a different mode or more extensive right of review is given, after conviction. Until conviction ensues upon trial, no such rights as those given by the statute above cited exist; and it would be a singular and dangerous construction, to hold that the modes of reviewing judgments provided for different courts operate as vested rights restricting trials to the courts for which such modes are specially provided, and to prevent the exercise of any jurisdiction by other courts.

* The following is the opinion of BARRETT, J.:

BARRETT, J. :

The question with respect to the challenge to the array of petit jurors was fully discussed in the opinion filed in this court upon the twenty-sixth instant, in the case of Jacob Stauderman. It was there shown that the title of an officer *de facto* could not be inquired into collaterally, and that the objection to Mr. Dunlap's official action was wholly without foundation. This is not only clear upon principle but is in accordance with the whole current of authority in this country and in England. Reference is made to that opinion for those authorities, and for the more elaborate statement of the reasons for denying the present application, so far as it proceeds upon the particular ground.

The only other point presented on behalf of the condemned is that the Court of General Sessions had no power to transfer the indictment to this court for trial, and consequently that this court was without jurisdiction in the premises. It is conceded that the Court of General Sessions possesses the general power to transfer indictments to this court for trial, and indeed the statute upon the subject is clear and explicit: "Every such Court of Oyer and Terminer shall have power to try all indictments found in the Court of General Sessions of the Peace of the same county, which *shall have been sent* by order of such Court of General Sessions to and received by said Court of Oyer and Terminer." (2 R. S., 204, § 30.)

The claim is, that the power is limited to the indictment before arraignment and plea, and not to the issue. The point is truly frivolous and there would be more force in the claim that the Sessions could not remove the indictment *until after* arraignment and plea. For the indictment is sent to this court *for trial,* and there can be no trial except of an issue.

The application for a writ of error with a stay of proceedings is therefore *denied.*

The challenge to the array of petit jurors was properly overruled. The facts stated in the challenge, from which the legal conclusions contained in it are deduced, are in substance that the panel of jurors were selected by one Thomas Dunlap, acting illegally as commissioner of jurors, under the nomination and appointment of the mayor of the city of New York, in pursuance of an act of the legislature of the State of New York, which act is alleged to be unconstitutional and void for certain reasons assigned; and that one Douglas Taylor, the alleged lawful commissioner, did not so act. This is in substance, an averment that Douglas Taylor was and is the commissioner *de jure*, and that Thomas Dunlap was and is commissioner *de facto* only acting under color of an appointment made pursuant to a statute which is unconstitutional, and that therefore Dunlap is not commissioner *de jure*, and his acts are illegal. The district attorney demurred to the challenge, and the plaintiffs in error joined issue on the demurrer. The effect of the demurrer was to admit that Dunlap selected the jury while acting as commissioner of jurors under the color of right given him by the appointment of the mayor made under the statute claimed to be unconstitutional. The issue thus joined raised two questions of law : First, whether the legality of the acts of an officer *de facto*, exercising the functions of the office under color of appointment, can be tried and determined in the form presented by the challenge to the array ; second, whether the appointment by the mayor was void because of the unconstitutionality of the act referred to. But it was not necessary to consider the latter question unless the acts of an officer *de facto* can be challenged by questioning their validity in a collateral proceeding between other parties, and the legality of his title to the office be thus tried. The authorities are numerous in condemnation of any such right. (*People* v. *Collins*, 7 Johns., 549 ; *M'Instry* v. *Tanner*, 9 id., 135 ; *Wilcox* v. *Smith*, 5 Wend., 231 ; *People* v. *Stevens*, 5 Hill, 616 ; *People* v. *Hopson*, 1 Denio, 574 ; *People* v. *Cook*, 8 N. Y., 67 ; *Hall* v. *Luther*, 13 Wend., 491 ; *People* v. *Peabody*, 6 Abb. Pr., 228.)

The embarrassments that would flow from permitting issues of that kind to be tried in that manner would be prejudicial to the public and to a great extent, destructive of the administration of

justice. A prisoner arraigned might assert that the judge sitting to try him was not lawfully chosen or appointed, and thus make an issue which would divest the court of jurisdiction if triable in that form, because the judge could not sit to try an issue directly involving and affecting his own judicial existence. He might challenge the validity of the election of the clerk, of the sheriff, and of every other officer connected with the drawing of jurors, *seriatim*, and thus compel the court to sit and try the validity of their several acts by determining the regularity of their elections. It is enough, in all cases where such a question is raised collaterally, that the person acting as an officer is discharging the duties of the office under color of right, evidenced by his possession of the office, and by exercising its functions under the power of an appointment or election independently of the question of legal title. Hence the court below was entirely right in holding that Dunlap's official acts could not, in this case, be questioned by challenge on the grounds alleged.

There was of course, nothing meritorious in the challenge, because it could not make the slightest difference to the prisoners whether the panel of jurors by which they were about to be tried were selected from lists prepared by one or the other of the persons named. The qualification of the jurors could neither be increased nor diminished by the officer who selected them; and no injury, in fact, could accrue to the prisoners whether the commissioner was one acting both *de facto* and *de jure*, or only *de facto ;* and courts would not be justified, in any case, in arresting a trial for the purpose of settling a question so wholly immaterial in any valuable consequence to the accused. It follows that there was no error in the rulings of the court below. The counsel for the prisoners, with commendable zeal, have brought these questions before us as probably the last hope of their unhappy clients, but while we see much to commend in the patient labor they have given, without reward, in the discharge of every duty in this case, we cannot feel that there are any questions of sufficient doubt to justify us in holding the case for longer consideration.

The conviction and judgment must be affirmed.

DANIELS, J., concurred.

Judgment affirmed.