In the Matter of the Application of RUDOLPH EVINGSON for a Writ of *Certiorari* to WILLIAM G. DANCE, Justice of the Peace in and for the Town of Norman, in the County of Cass, and State of North Dakota.

**Jurisdiction of Justice of the Peace—Entry of Judgment—Certiorari—Contradiction of Return.**

1. Under our statutes justices of the peace are required to perform all their judical acts within the township and county for which they were elected. They are also required, where a case in justice court is tried by a jury, to enter judgment at once upon the verdict; and any judgment entered in disregard of either of these provisions may be avoided in any proper proceeding for that purpose.

2. The writ of *certiorari* authorized by our statute cannot be directed to an ex-official after he has parted with the record sought to be reviewed.

3. In *certiorari* proceedings, the duly authenticated transcript of the record and proceedings kept by the inferior tribunal, and returned to the superior court in obedience to the writ, imports verity, and cannot be contradicted by the parol return of the officer who made the record; and this prohibition extends to all necessary presumptions arising from the record.

(Opinion Filed Aug. 29, 1891.)

*A*PPEAL from district court, Cass county; Hon. WILLIAM B. MCCONNELL, Judge.

*W. E. Dodge* and *W. E. Purcell*, for appellant. *Benton & Amidon*, for respondent.

Application by Rudolph Evingson for a writ of *certiorari* to William G. Dance, a justice of the peace, to compel him to send to the district court a transcript of certain records. Writ granted and judgment entered. Respondent appeals. Judgment reversed and the court below directed to quash the writ.

W. E. Dodge and W. E. Purcell, for appellant:

The writ of *certiorari* will be granted only where there is no writ of error or appeal, nor, in the judgment of the court, any

other plain, speedy and adequate remedy. People v. Betts, 55 N. Y. 600; Sundberg v. District Court, 16 N. W. Rep. 724; Fogg v. Parker, 11 Iowa 18; School District v. District Court, 48 Iowa 182; Duggen v. McGruder, 12 Amer. Dec. 527: Commonwealth v. McAlister, 26 Amer. Dec. 70. The acts complained of in the petition are purely ministerial and could not operate to divest the court of jurisdiction or destroy the verdict which was duly entered, and the docketing of which was equivalent to the entry of judgment. Lynch v. Kelly, 41 Col. 232; Overhall v. Pero, 7 Mich. 316. The return to the original writ discloses a perfect docket record, correctly entered at the proper time and place, and that record must control and cannot be contradicted or impeached by the return of the justice, or his predecessor. Weaver v. Lammon, 28 N. W. Rep. 905; Mudge v. Yaple, 25 N. W. Rep. 298; Galloway v. Corbitt, 52 Mich. 460; Hauser v. Wisconsin, 33 Wis. 678; Goodnough Horse Shoe Co. v. Rhode Island Co., 95 U. S. 19; Harris v. Barber, 129 U. S. 366; National Tube Works Co. v. City of Chamberlain, 5 Dak. 54.

Benton & Amidon, for respondent:

By failure to render and enter judgment at once upon receiving the verdict of the jury, the justice lost jurisdiction of the action, and the judgment was an absolute nullity. Watson v. Davis, 19 Wend. 371; Sibley v. Howard, 3 Denio 72; Barrian v. Olmstead, 4 E. D. Smith 279; Wiseman v. Railroad Co., 1 Hilt. 300; Gillian v. Spratt, 41 How. 36; Gillingham v. Jenkins, 40 Hun 594; Saunders v. Tioga Manufacturing Co., 27 Mich. 520; Brady v. Tabor, 29 Mich. 199; McNamara v. Spees, 25 Wis. 539; Hull v. Malony, 14 N. W. Rep. 374; Guthrie v. Humphrey, 7 Iowa 33. The failure to enter the judgment at once upon receiving the verdict operated as a discontinuance of the action. Watson v. Davis, 19 Wend. 371; Bloomer v. Merrill, 29 How. 262. The judgment of the justice was an absolute nullity because upon receiving the verdict of the jury he adjourned his court indefinitely, without specifying any time or place at which the court would sit for further proceeding in the case. Roberts v.

Warren, 3 Wis. 736; Brown v. Kellogg, 17 Wis. 475; Campbell v. Bacon, 20 Wis. 639; Grace v. Mitchell, 31 Wis. 533; Bramstead v. Ward, 44 Wis. 591. The judgment of the justice was void because it was rendered and the costs taxed in the absence of the defendants, and without any notice to them, at a private office, distant from the place at which the case was tried. Clark v. Reese, 5 N. J. Law 487. The judgment of the justice was an absolute nullity because it was rendered and entered by him while outside of his territorial jurisdiction. State ex rel. v. Marvin, 3 N. W. Rep. 991; Block v. Henderson, 3 Law. Rep. 325; Phillips v. Thralls, 26 Kan. 790. The judgment of the justice was void because illegal costs were taxed and included in the same. Stokes v. Kerr, 11 Wis. 407. The judgment in this case being an absolute nullity would not support an appeal. Guthrie v. Humphrey, 7 Iowa 23; Gillingham v. Jenkins, 40 Hun 594; Harrington v. State, 50 Wis. 68; May v. Dooley, 59 Ind. 287; Morton v. Sawyer, 59 Ind. 587; Harrison v. Sager, 27 Mich. 476. The court of review is not limited to the technical record of the justice, but has authority to require the justice to certify to it any fact or evidence which is necessary to the court of review in passing upon the question of jurisdiction. Blair v. Hamilton, 32 Cal. 50; Whitney v. Board of Delegates, 14 Cal. 550. The district court properly issued the second writ of *certiorari* to A. W. Kuhn, notwithstanding the fact that at the time he had gone out of office and turned over the records to his successor. Harris v. Whitney, 6 How. Pr. 175; Conover v. Devlin, 15 How. Pr. 470.

The opinion of the court was delivered by

BARTHOLOMEW, J.    The facts giving rise to this case, briefly stated, are as follows: One A. W. Kuhn was justice of the peace in Norman township, Cass county.    An action, properly brought on for trial before said justice and a jury on January 3, 1890, at a point in said township agreed upon by the parties thereto, and in which the petitioner in this case was one of the defendants, resulted in a judgment against the defendants.    On March 22, 1890, the petitioner obtained from the judge of the district court of Cass county a writ of *certiorari* to review said

judgment. In the interim the official term of said Kuhn had expired and his docket had passed to the possession of his successor, one William G. Dance. The writ was directed to Justice Dance, requiring him to send up a transcript of the records and proceedings in the case and of all the pleadings and papers on file in his office relating thereto. The return of this officer to the writ showed a complete and legal judgment. Every entry which the law required should be made had been made. We do not understand that this is questioned. At the end of the formal judgment and preceding the signature of the justice, were the words, "Dated at Kindred, Cass county, N. D., January 3rd, 1890." Kindred is a village in Norman township. When this return was in, petitioner applied for and obtained a supplemental writ, directed to Ex-Justice Kuhn, requiring him to return a full "statement" of all his proceedings in said action. This supplemental writ was issued upon an affidavit tending to show that the statements in the record were in fact false. When the response of Mr. Kuhn to the supplemental writ was received, it stated that when the verdict of the jury was returned he adjourned court, without fixing time or place of further meeting, and took his docket and went to the city of Wahpeton, in Richland county, where on January 5, 1890, the judgment was entered and signed. If the statements contained in the return of Ex-Justice Kuhn be true, he lost jurisdiction of the case when he adjourned as stated, and all his subsequent acts were without authority. Our statute—§ 6104, Comp. Laws—requires the justice, when a trial is by jury, to enter judgment at once in accordance with the verdict; and by § 6109 this judgment must include the costs allowed by law to the prevailing party. These provisions are mandatory. Hull v. Mallory, 56 Wis. 355, 14 N. W. Rep. 374; McNamara v. Spees, 25 Wis. 539; Brady v. Taber, 29 Mich. 199. Nor could Justice Kuhn legally enter judgment or tax costs or exercise any other judicial function outside the township and county for which he was elected. Section 6041, Comp. Laws, requires justices of the peace to keep their offices and hold their courts at some place within such county and township; and for a construction of similar provisions, see State v. Marvin, 26 Minn.,

323, 3 N. W. Rep. 991; Phillips v. Thralls. 26 Kan. 780. But when the return of Ex-Justice Kuhn was received, the defendant moved the court to quash the supplemental writ and return upon the following grounds, among others: *First*, that the writ of *certiorari* cannot be directed to an ex-official after he has parted with the record that is sought to be reviewed; *second*, that a parol return made by an ex-official is not competent to contradict the record kept by him at the time of the transactions. This attack was unsuccessful in the district court, and the defendant brings the questions to this court by appeal.

The points above specified were well taken, and the motion should have been sustained. To sustain the position that the writ of *certiorari* may be directed to an ex-officer after he.has parted with the record respondent relies upon Harris v. Whitney, 6 How. Pr. 175, and Conover v. Devlin, 15 How. Pr. 470. The cases do not go far enough. There is no allusion to the real point here. Those cases do hold that the writ may run to an ex-officer, but there is no suggestion that such ex-officer was not in each of those cases in possession of the record to be reviewed. On the contrary, in Conover v. Devlin, the writ directed the ex-officer " to certify to this court the proceedings had before him in this matter *and the record thereof*" (the italics are ours), thus clearly showing that such ex-officer had the record in his possession. And to support the position that the writ was properly directed the court quote the following from Bac. Abr. " *Certiorari*," F: " If the person who ought to certify a record, as a justice of the peace who hath taken a recognizance, or a judge of *nisi prius* who hath taken a verdict, or a coroner who hath taken an inquest, die with the record in his custody, the *certiorari* may go to his executor." Certainly that authority would never be cited to show that the writ could run to one not in possession of the record. Neither can it be said from what appears in the case that the party to whom the writ was directed was not in the possession of the record in Harris v. Whitney. There was in that case no motion to quash the return, but it was claimed that the return was a nullity on the authority of Peck v. Foote, 4 How. Pr. 425, where the court held that the return was an official act, and could only be made

by an officer. The case of Harris v. Whitney overrules the case in 4 How. Pr., and holds that the return may be made by an ex-officer—a holding that would be generally followed to-day, even as to the common law writ, if such ex-officer still retained the record to be reviewed. It is true, however, that the return made by the ex-officer in Harris v. Whitney was of matter not of record. So far as any report shows, there was no transcript in the return; certainly there was nothing in the return to contradict the record made below. But how far short this case falls of being an authority under our statute and in this state will become clear when we remember that the court upheld the subject-matter of that return upon the theory—and expressly so state—that it was competent for an ex-officer to make his return by affidavit; and that, if such ex-officer died before return made, the case could be heard on the affidavits of bystanders, and that each party could prepare such affidavits and serve on opposite party; thus clearly showing that in the judgment of the court, under the statute then governing them, an issue of fact might be determined by the superior court on *certiorari*. The authorities hereafter cited will show that such a proceeding is unknown under the common law writ. Our statute seems conclusive upon the point that the writ cannot run to an ex-officer who has parted with the record. Section 5509, Comp. Laws, reads: "The writ may be directed to the inferior court, tribunal, board, or officer, or to any other person having the custody of the records or proceedings to be certified." It is only when such "other person" has the custody of the record or proceedings that the writ can be directed to him. Again, § 5510 reads: "The writ of *certiorari* shall command the party to whom it is directed to certify fully to the court issuing the writ, at a specified time and place, and annex to the writ a transcript of the record and proceedings, describing or referring to them with convenient certainty, that the same may be reviewed by the court; and requiring the party in the meantime to desist from further proceedings in the matter to be reviewed." What does the statute mean by a transcript? Webster defines it: "That which has been transcribed; a writing or composition consisting of the same words as the original; a

written copy." There can be no transcript of that which never had a prior existence. How, under that statute, can a matter resting purely in the memory of an ex-justice, and by him reduced to writing for the first time after the writ is served upon him, have any standing in court as a return to a writ of *certiorari?* But, more, the very definition and office of the common. law writ preclude its running to any one who has not possession of the record to be reviewed. In Bac. Abr. it is thus defined: "A *certiorari* is an original writ, issuing out of chancery or the king's bench, directed to the judges or officers of inferior courts, commanding them to return the records of a cause depending before them, to the end that the party may have the more sure and speedy justice before him or such other justices as he shall assign to hear the cause." The substance of this definition has never been departed from except where the statute has broadened the scope of the writ: "In Donahue v. Will Co., 100 Ill. 94, it is said: "It [the writ of *certiorari*] requires no return of the evidence or certificate of facts outside the record, and the trial must be had upon the record alone." Again, from the same court : "The common law writ of *certiorari* simply brings before the court for inspection the record of the inferior tribunal or body, and its judgment affects the validity of the record alone—that is, determines that it is valid or invalid." Hyslop v. French, 99 Ill. 171. If only the record can be returned or considered, then only the custodian of the record can make return. In Iron Co. v. Schubel, 29 Wis. 444, it is held that the party who has the custody of the record, and he alone, can make return to the writ. Wood, Mand. p. 173, thus states the rule: "It [the writ of *certiorari*] is addressed to all the persons whose return is necessarily to enable the court to determine the regularity or validity of the proceedings of the officer or tribunal sought to be reviewed, and the fact that the person is out of office is no objection if he has the custody of the record." In addition, on this point, see State v. City of Fond du Lac, 42 Wis. 287; Crawford v. Township Board, 22 Mich. 405; People v. Supervisors, 1 Hill, 195; People v. Commissioners, 30 N. Y. 72; State v. Noonan, 24 Minn. 125; Wadsworth v. Sibley, 38 Wis. 486; Roberts v. Com-

missioners, 24 Mich. 182; People v. Hill, 65 Barb. 171; Farmington River Water Power Co. v. County Commissioners, 112 Mass. 206; Com. v. Winthrop, 10 Mass. 177; Rutland v. Commissioners, 20 Pick. 71. .

Upon the theory that the supplemental return contradicts the record entries, and to show the competency of such return for that purpose the case of Blair v. Hamilton, 32 Cal. 50, is relied upon by respondent. That case is based upon Whitney v. Board, 14 Cal. 479, and Lowe v. Alexander, 15 Cal. 300. No other cases are cited. The California statute is identical with our own, so far as the scope of the writ is concerned, though their practice act gives a wider range of investigation under the writ than we have; but that is immaterial. But these cases are hardly authority for the position. In Whitney v. Board and Blair v. Hamilton it was held that the superior court had the right to have before it the evidence on which the inferior tribunal based the conclusion that it had jurisdiction, and that, where this evidence did not establish jurisdiction as matter of law, the action of the inferior tribunal could be set aside. No effort was made in either of those cases to contradict any statement of fact contained in the record by matter resting in parol. In Lowe v. Alexander there was no question on *certiorari* before the court. An incidental reference was made to the holding in the Whitney case. The learned judge who wrote the opinion in the Whitney case used this language, at page 500: "The provisions of our statute are merely in affirmance of the common law. The nature and effect of the writ remains unchanged. Its functions are neither enlarged nor diminished, and the rules and principles which govern its operation are still the same." Our statute being identical with that of California, of course all the decisions under the common law writ should have proper weight in this state. Many of the cases already cited announce in positive terms that the reviewing court can consider only the record made by the inferior tribunal, which is simply declaring in another form that the record cannot be contradicted. This is specially true of the cases cited from Illinois and Massachusetts. The point is emphasized that the record cannot be contradicted, but the case must be decided

upon an inspection of the record. In State v. Kemen, 61 Wis. 494, 21 N. W. Rep. 530, it is said: "Upon a writ of *certiorari* nothing can be inquired into except what appears of record in the inferior court or body, and upon the return no parol testimony is allowed to establish any issue made by the return to the allegations contained in the petition for the writ." Weaver v. Lammon, 62 Mich. 366, 28 N. W. Rep. 905, was *certiorari* to a justice of the peace. He made return of a transcript of the record, and also of certain matters not of record, and these matters contradicted the record. Said the court: "The judgment as it appears entered in the docket must control. The record of his judgment in his docket cannot be contradicted by his return to the writ." That case cannot be distinguished in principle from this case, except that the return of the extraneous matter was an official act of the justice before his term expired. Miller v. McCullogh, 21 Ark. 426, was an attack by *certiorari* on a justice court judgment. The petition for the writ alleged that the defendant was not served with process in the proper township. The transcript sent up by the justice in obedience to the writ showed service in the proper township, but the defendant in the *certiorari* proceeding admitted in open court that service was not made in the township stated in the return. Held, that on *certiorari* the record was conclusive even as against such admission. See, also, Prall v. Waldron, 2 N. J. Law, 135; Inhabitants, etc., v. Commissioners, 5 Allen 13; Cassidy v. Mellerick, 52 Wis. 379, 9 N. W. Rep. 165. It is seldom that a case can be cited so entirely in point to the matter under discussion as is this last case from Wisconsin. That case was *certiorari* to a justice of the peace. There had been an adjournment in the case, and it was claimed that the justice failed, prior to such adjournment, or while the parties were present, to enter in his docket any place to which said cause was adjourned, but that at some subsequent time he had added to the docket entry the following words: "At my office in the town of Poysippi. S. B. HALLECK, Justice of the Peace." It was also claimed that on the adjourned day the case was not called at the office of the justice, but at a town hall some miles distant. The justice was required to make a return as to these

allegations, and his return showed the allegations to be true; but the record certified up in obedience to the writ showed the quoted words regularly entered in connection with the time of adjournment. The court, after a review of the authorities, say: "These decisions clearly indicate that in reviewing a judgment of a justice court upon a common law writ of *certiorari,* the record imports verity notwithstanding the statements of the justice to the contrary, even upon matters of jurisdiction. The cases also dispose of the question as to the place of calling the suit at the time to which it was adjourned. Upon such a writ it must be conclusively presumed that it was called at his office. To allow the return to have any effect as against the record and the presumptions arising from it would be to authorize issues of fact as to what did or did not occur." To our minds the conclusion thus reached is unavoidable on principle. To permit the record to be impeached by the recollections of the justice is, in effect, contradicting the return by parol evidence; and there is such an avalanche of authority against that proceeding that no one would claim that it could be done. If the supplemental return was properly received in this case, then we are reduced to this position: When Justice Dance certified the record in obedience to the writ, had the petitioner sought to bring in Ex-Justice Kuhn, and show by his affidavit or his oral testimony in open court that the statements in the record were untrue, such a course would not have been tolerated for a moment. But Mr. Kuhn, a private citizen, is allowed to make an unsworn statement out of court, dignify it with the name of a "return," and by the magic of that name the statement is powerful enough to scatter a record which the same matter, coming from the same party under the solemnity of an oath, would be powerless to touch. Further, the statute makes the transcript *prima facie* evidence of all the facts therein stated. The supplemental return contradicts the transcript. The transcript is entitled to as much weight as the unsworn statement of a private citizen. Suppose the truth of that statement be questioned, how is a court to reach a decision? No evidence can be introduced to fortify or defeat either the transcript or the statement. By what instrumentality is the court to solve the

dilemma? By the allowance of the supplemental return an issue of fact would be formed in a proceeding where the trial of an issue of fact is postively prohibited by law. It is true that in nearly all the states there now exists some form of statutory writ of *certiorari* broader in its scope and more flexible in its operation than the common law writ to which we are confined.

It is urged upon us, however, that the return to the supplemental writ does not, in fact, contradict the record of the justice as the statute requires it to be kept; that the statute nowhere requires the justise to enter the time or place of entering judgment; and that the words, "Dated at Kindred, Cass county, N. D., January 3rd, 1890," not being required by statute, form no part of the record proper, and hence can be contradicted by parol. It is true that entry is not specially enjoined. We may erase it, and still the difficulty is not removed, because the facts stated in that entry are necessarily presumed from what the law does require to be made matter of record. In every case in justice court when all the entries that the law requires to be made are made (and there is no claim that the transcript as returned in this case does not show all the entries required by statute), the record must necessarily show a valid judgment; otherwise a judgment of a justice of the peace could not be proven by the docket or a transcript thereof. But, as we have already seen, the judgment in order to be valid, must be entered at once on the return of the verdict, and the justice must make the entry while in the proper township and county. Hence, in this case, with the quoted entry erased, we must presume from the record that the judgment was entered on January 3, 1890, in Norman Township, Cass county, N. D.; otherwise we would have a judgment containing every entry that the statute requires, yet void on its face. To allow the necessary presumptions arising from a record to be contradicted by parol would be just as fatal to the record in every case as to allow the express words of the record to be contradicted. In Cassidy v. Millerick, *supra*, the justice stated that he called the case at the town hall three miles from his office, but the court said: "Upon such a writ [*certiorari*] it must be conclusively pre-

sumed that it was called at his office. To allow the return to have any effect as against the record and the presumptions arising from it would be to authorize issues of fact as to what did or did not occur." The evil that would result in cases of this character from holding that the record imports verity is far less than the evil that would result from permitting court records to be frittered away by the memory of man. Nor do we think the petitioner was without remedy in this case; but that question, while important, is not controlling. It often happens that a party is without remedy except against the offending official. It was well said in Cassidy v. Millerick: "The question is not whether the defendant had a remedy, but was he entitled to the one he sought in this writ?" For the reasons above stated the district court is directed to reverse its judgment, and quash the supplemental writ and the return thereto. All concur.

CORLISS, C. J. I concur on the ground that the record of the case showed that the judgment was entered at the proper time and place, and that this record connot be overthrown by the parol return. There can be no stronger presumption that an officer will make a false record than that he will make a false return. The issue between the record and the return cannot be litigated; and as one or the other must prevail, it is consonant with sound principle to give verity to the record.